PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WARREN MONROE HAYES,
*Defendant-Appellant.*

No. 02-4421

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

WARREN MONROE HAYES,
*Defendant-Appellee.*

No. 02-4478

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-01-335)

Argued: January 24, 2003

Decided: March 14, 2003

Before WILKINS, Chief Judge, WIDENER, Circuit Judge, and
Morton I. GREENBERG, Senior Circuit Judge of the
United States Court of Appeals for the
Third Circuit, sitting by designation.

Affirmed in part and vacated and remanded in part by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Widener and Senior Judge Greenberg joined.

**COUNSEL**

**ARGUED:** Mary Elizabeth Maguire, Assistant Federal Public Defender, Richmond, Virginia, for Appellant. Laura C. Marshall, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Richmond, Virginia, for Appellee.

---

**OPINION**

WILKINS, Chief Judge:

Warren Monroe Hayes appeals his convictions for 24 counts of procuring the presentation of tax returns containing false statements, in violation of 26 U.S.C.A. § 7206(2) (West 2002). He asserts that 20 of the charges against him are barred by the statute of limitations, that six of his convictions are not supported by sufficient evidence, and that the district court erred in admitting certain evidence. On cross-appeal, the Government contends that the district court improperly refused to consider relevant conduct at sentencing. Finding merit only in the Government's claim, we affirm Hayes' convictions, vacate his sentence, and remand.

I.

On November 19, 2001, a grand jury in the Eastern District of Virginia issued an indictment charging Hayes with preparing 24 tax returns that fraudulently inflated the taxpayers' deductions. The returns in question were filed between February 17, 1996 and April 15, 1999.

Hayes moved to dismiss all but four of the charges. In support, he argued that a three-year statute of limitations applied under 26 U.S.C.A. § 6531 (West 2002) and that only four of the charges in the indictment involved conduct within the preceding three years. The district court denied Hayes' motion, concluding that the applicable limitations period is six years, not three.

At the ensuing trial, the Government presented testimony from several witnesses who had retained Hayes to prepare their taxes. Their testimony indicated that Hayes was not a full-time accountant or tax-preparer but that he supplemented his income every year by preparing returns for relatives and acquaintances. These returns were ostensibly based on documents provided to Hayes by his customers. The customers testified, however, that the returns prepared by Hayes substantially overstated some of their deductions, primarily for charitable contributions and medical expenses. The customers further testified that they did not review the returns before filing them; thus, even as they recognized that they were receiving larger refunds than they were accustomed to, they did not become aware of the overstatements until contacted by investigators from the Internal Revenue Service (IRS).

Hayes testified in his own behalf. He admitted that he made errors in the returns he prepared but denied fabricating any figures in order to increase his customers' deductions.

The jury found Hayes guilty of all 24 counts charged in the indictment. The court then sentenced Hayes to 24 concurrent terms of 30 months imprisonment.

## II.

Hayes' first claim is that the district court erred in refusing to apply a three-year statute of limitations to the charges against him. This is a legal issue which we review de novo. *See Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

Section 6531 provides that criminal violations of tax laws are ordinarily subject to a three-year statute of limitations. The statute further provides, however, that the limitations period is six years for eight types of offenses. As is relevant here, the longer limitations period applies to

> the offense of willfully aiding or assisting in, or procuring, counseling, or advising, the preparation or presentation under, or in connection with any matter arising under, the

> internal revenue laws, of a false or fraudulent return, affidavit, claim, or document (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document).

26 U.S.C.A. § 6531(3). The district court concluded that the charges against Hayes were governed by § 6531(3) and thus subject to a six-year statute of limitations. We agree.

The charges against Hayes alleged violations of § 7206(2), which establishes criminal penalties for any person who

> [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.

Even a cursory comparison of these provisions demonstrates that § 6531(3) refers to offenses under § 7206(2). The language of the two statutes is virtually identical, with the only substantive difference being that § 6531(3) omits the requirement that the defendant's false statements relate to a "material matter."

Hayes contends that this difference demonstrates that § 6531(3) does not apply to violations of § 7206(2). This argument might be persuasive if the additional requirement appeared in the procedural provision establishing the statute of limitations rather than the substantive provision defining the crime. Here, however, the reverse is true. Thus, while there may be offenses that satisfy § 6531(3) without including all the elements of a § 7206(2) violation, it is not possible to violate § 7206(2) without meeting all the requirements of § 6531(3). *See United States v. Zavin*, 190 F. Supp. 393, 394 (D.N.J. 1961) ("A return which is false as to any material matter is a false return.").

Hayes further argues that the absence of any reference to § 7206(2) in § 6531 demonstrates that Congress did not intend for the extended statute of limitations to apply to § 7206(2) offenses. He bolsters this argument by noting that § 6531(5) specifically alludes to § 7206(1). We acknowledge that the legislative intent would be clearer if § 6531 identified both of the relevant portions of § 7206 in the same manner, rather than referring to one by citation and to the other by incorporating its language. Nevertheless, the absence of an explicit reference to § 7206(2) within § 6531 does not preclude the application of a six-year limitations period here. Of the eight categories of offenses subject to the six-year period under § 6531, four are defined through descriptions of offense conduct, *see* 26 U.S.C.A. §§ 6531(1)-(4), while the other four are defined through statutory references, *see* 26 U.S.C.A. §§ 6531(5)-(8). A holding that the six-year statute of limitations applies only to the statutory provisions explicitly mentioned in § 6531 would effectively nullify the four paragraphs of that statute that use descriptions rather than citations. This result would contravene well-settled principles of statutory construction. *See Lane v. United States*, 286 F.3d 723, 731 (4th Cir. 2002).

For the foregoing reasons, we conclude that application of § 6531(3) to offenses under § 7206(2) is appropriate, notwithstanding that § 6531 neither expressly refers to § 7206(2) nor incorporates all the elements of a § 7206(2) offense. We therefore hold that the district court properly denied Hayes' motion to dismiss the 20 charges involving conduct occurring more than three years before he was indicted.

### III.

We next consider Hayes' claim that there was insufficient evidence to support six of his convictions. We review this claim de novo. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

Section 7206(2) requires the Government to prove that "'(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; . . . the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful.'" *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (quoting *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990)).

The verdict of the jury that Hayes committed this offense will be upheld if "'there is substantial evidence, taking the view most favorable to the Government, to support it.'" *United States v. Bennafield*, 287 F.3d 320, 324 (4th Cir.) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)), *cert. denied*, 123 S. Ct. 388 (2002). With these standards in mind, we now examine the evidence supporting the convictions challenged by Hayes.

## A. *Count 7: Eunicea and Larry Ellerbe*

Eunicea Ellerbe testified that she retained Hayes through her sister, Cynthia Peeples. Ellerbe gave relevant documents to Peeples for delivery to Hayes, and Hayes then prepared a tax return for Ellerbe and her husband. This return included, among other inaccurate figures, a claimed deduction of $16,381 for medical expenses. Ellerbe testified that she did not give Hayes any information supporting such a deduction.

Hayes contends that his conviction relating to the Ellerbe tax return is not supported by sufficient evidence because there was no evidence negating the possibility that Peeples, rather than Hayes, invented the deductions listed on the Ellerbe return. We disagree. Peeples testified at trial that, in addition to recruiting Hayes to prepare returns for Ellerbe, she twice hired him to prepare her own returns. The first return included deductions not supported by the information Peeples had provided to Hayes, and Peeples was audited as a result. She testified that she subsequently instructed Hayes "to do my taxes, but only put the figures on my taxes of what I give you." J.A. 564-65. The jury could reasonably infer that Peeples would not adhere to this policy for herself and yet provide Hayes with false information about her sister's taxes. This inference is particularly strong in light of the substantial similarities connecting the misstatements in the Ellerbe return with those in other returns prepared by Hayes. *Cf. Morgan v. Foretich*, 846 F.2d 941, 944 (4th Cir. 1988) (holding that evidence that two half-sisters suffered similar sexual abuse tended to show that they were abused by their common parent or grandparents).

## B. *Counts 12 and 13: Ronald Gullette*

Like Eunicea Ellerbe, Ronald Gullette retained Hayes through an intermediary (Van Ashe) and never interacted with Hayes directly.

Hayes thus contends that the evidence fails to establish that he created the false information that was included on returns he prepared for Gullette; instead, such information may have been given to Hayes by Ashe. Once again, however, the jury could reasonably infer that Hayes was responsible, because the misstatements in Gullette's returns were so similar to those in other returns prepared by Hayes.

### C. *Count 14: Linda Macklin*

Linda Macklin, Hayes' sister-in-law, testified that Hayes prepared her tax returns for 1996 and 1997. On her 1996 return, Hayes included a medical expense of over $13,000. Macklin told the grand jury that she had incurred more than $14,000 in medical bills in 1996, when her daughter was born. On this basis, Hayes asserts that the deduction noted on Macklin's return was not fraudulent.

This argument fails because Macklin testified that she never discussed her medical bills with Hayes. Also, it appears that Macklin never claimed to have paid these bills herself; instead, she testified that they were paid by her insurance, which rendered them non-deductible, *see* 26 U.S.C.A. § 213(a) (West 2002). The jury could reasonably infer from these circumstances that Macklin did not provide Hayes with the $13,000 figure listed on her tax return and that Hayes may instead have invented this number. Moreover, while the $13,000 deduction noted by Hayes was close to Macklin's actual expenses, this figure also resembles false medical deductions claimed by Hayes in other returns he prepared.

### D. *Counts 23 and 24: Gloria and Willard[1] Turnage*

Gloria Turnage, like Linda Macklin, is Hayes' sister-in-law, and, like Macklin, Gloria hired Hayes to prepare tax returns for her and her husband in 1996 and 1997. These returns included large deductions for medical expenses and charitable contributions. Hayes asserts that the Turnages' testimony established that these deductions were accurate. This is incorrect. Under questioning by the court, Willard Tur-

---

[1]The indictment spells Mr. Turnage's first name "Williard." J.A. 13. It appears in the transcript as "Willard," however. *Id.* at 188. We have adopted the latter spelling.

nage testified that the deductions on the Turnages' returns were "wrong." J.A. 193. Thus, the evidence supports the conclusion that the Turnages' returns included false statements.

Although Hayes has not raised this issue, we note that the evidence also supports the inference that it was Hayes who fabricated the incorrect amounts noted on the Turnages' returns. Gloria testified that she gave Hayes a series of documents—"[m]y W-2s, my medical bills, my financial statement from church, my day care," *id.* at 170—and let him compute her deductions. Willard, for his part, stated that he "really didn't do anything" to assist Hayes with the preparation of tax returns. *Id.* at 189. It follows that neither Gloria nor Willard provided Hayes with the incorrect numbers that appeared on their tax returns. Consequently, Hayes must have either derived those numbers from Gloria's records or invented them himself. In light of the general reliability of business records and the substantial similarities between the errors on the Turnage returns and false deductions noted on other returns prepared by Hayes, a jury could reasonably conclude that Hayes fabricated the incorrect figures on the Turnage returns. Accordingly, the evidence was sufficient to support Hayes' convictions.

IV.

Hayes' remaining claims challenge the admission of certain evidence. Decisions allowing the introduction of evidence are reviewed for abuse of discretion. *See United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001), *cert. denied*, 122 S. Ct. 1581, 1945 (2002).

A. *Summary Charts*

Hayes initially challenges the admission of charts created by Special Agent Jo Ann Haarstick of the IRS. These charts summarized the alleged misstatements in tax returns prepared by Hayes. Hayes contends that these charts were unnecessary because this case was not unduly complex. He further asserts that the charts tended to bolster the testimony of the taxpayers who claimed that Hayes included false information in their returns.

We uphold the admission of the charts for three reasons. First, although the trial was short, numerous witnesses testified about multi-

ple errors in 24 different tax returns; consequently, the charts may have aided the jury in organizing the information it received before Haarstick testified. *See United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997) (noting that a decision to admit summary charts should be guided by consideration of the "complexity and length of the case as well as the numbers of witnesses and exhibits"). Second, the charts and accompanying testimony assisted the Government in meeting its burden of proving that Hayes' misstatements were material to the computation of taxes owed by his customers. Third, the district court minimized the possibility that the jury would treat the charts as substantive evidence by instructing that, if the information in the charts conflicted with the materials from which the charts were derived, "it is the raw material underlying the charts and summaries that controls." J.A. 624; *see Loayza*, 107 F.3d at 264 (upholding admission of charts based in part on use of limiting instruction).

## B. *Vouching by Haarstick*

Hayes next contends that the district court improperly permitted Haarstick to vouch for other Government witnesses. This claim arises from the following colloquy, which occurred at the end of the Government's direct examination of Haarstick:

Q   And were any of the taxpayers subjects of the investigation?

A   No.

Q   Why is that?

A   The element was willfulness. And when the interviews were done, to my knowledge —

[DEFENSE COUNSEL]: This requires hearsay. Second of all, requires a legal opinion, which I don't think she is qualified to make.

THE COURT: No. It is a policy of the IRS. The objection is overruled.

Proceed.

BY [THE PROSECUTOR]:

Q   If you could just — the question was why weren't they
    considered to be — why wouldn't the IRS have consid-
    ered them to be subjects of the investigation?

A   It was determined that they did not willfully know what
    was on the tax return. They had not reviewed it, didn't
    have knowledge that it was false.

J.A. 483-84.

It is impermissible for a prosecutor to indicate her personal belief
in the credibility of Government witnesses or to elicit one witness'
opinion that another witness has told the truth. *See United States v.
Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993). Such improper vouching
is not necessarily reversible error, however. Instead, a reviewing court
must assess the prejudicial effect of the improper comments by con-
sidering "(1) the degree to which the comments could have misled the
jury; (2) whether the comments were isolated or extensive; (3) the
strength of proof of guilt absent the inappropriate comments; and
(4) whether the comments were deliberately made to divert the jury's
attention." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir.
1997).

We assume for purposes of decision that Haarstick's testimony
amounted to improper vouching. Nevertheless, applying the factors
listed in *Sanchez*, we hold that any error was harmless.[2]

With respect to the first factor, we conclude that the comments had
no appreciable effect on the jury. We recognize that the comments in
question went to the central issue to be decided at trial—that is,

---

[2]The Government asserted at oral argument that this claim is subject
to plain error review because Hayes did not object on the basis of
improper vouching. We need not consider whether Hayes adequately
preserved this claim, because we conclude that the Government prevails
even under a harmless error standard.

whether the misstatements in tax returns prepared by Hayes resulted from inaccurate information provided by Hayes' customers or from Hayes' own fabrications. But Haarstick's statement that the Government had resolved that question against Hayes only restated the obvious; if the IRS had believed Hayes rather than his customers, Hayes would not have been indicted. Furthermore, Haarstick expressed the conclusion of the IRS, without indicating either that the IRS had any undisclosed knowledge to support that conclusion or that she personally considered the testimony against Hayes to be credible. For these reasons, we do not believe the testimony in question misled the jury.

The remaining three factors also weigh against reversal. The testimony at issue was not extensive, but rather amounted to two or three sentences in the middle of the trial. In addition, the Government's case, viewed in its entirety, was quite strong, as it demonstrated a pattern of similar misstatements on 24 different tax returns prepared by Hayes; thus, the jury could not have credited Hayes' defense—that he relied entirely on information provided by his customers—without concluding that Hayes' diverse customers all made false claims involving the same types of deductions and similar dollar amounts. And finally, there is nothing in the record to indicate that the Government deliberately elicited the statements in question for improper purposes. For these reasons, we affirm Hayes' 24 convictions for violating § 7206(2).

V.

We now turn to the Government's cross-appeal. The Government contends that the district court improperly refused to consider evidence that Hayes' offenses resulted in tax losses exceeding $274,000. "We review the district court's factual findings for clear error, but if the issue on review turns primarily on the legal interpretation of a guideline term, the standard moves closer to *de novo* review." *United States v. Hudson*, 272 F.3d 260, 263 (4th Cir. 2001) (alteration and internal quotation marks omitted).

The presentence report (PSR) prepared before Hayes' sentencing concluded that the crimes of which Hayes had been convicted cost the Government a total of $75,814 ("Indictment Losses"). The PSR then estimated that the Government suffered additional losses of $199,017

from 63 tax returns prepared by Hayes that did not result in prosecution ("Non-Indictment Losses"). In computing Hayes' sentencing range, the PSR included both the Indictment Losses and the Non-Indictment Losses in Hayes' relevant conduct. *See U.S. Sentencing Guidelines Manual* § 1B1.3 (2000) (defining relevant conduct).

Before the sentencing hearing, Hayes filed written objections to the PSR. With respect to the Non-Indictment Losses, he argued that (1) the 63 returns in question were not part of his relevant conduct, (2) the value of the Non-Indictment Losses was calculated improperly, and (3) consideration of the Indictment Losses alone would result in an appropriate sentence under 18 U.S.C.A. § 3553(a) (West 2000). The Government, responding in writing, disagreed with these assertions and offered to introduce evidence in support of its position.

The Government did not have an opportunity to present this evidence. At the beginning of the sentencing hearing, the district court ruled:

> Given the facts in the pre-sentence report, I grant the defendant's objections to the calculations of the tax loss amount. Even though relevant conduct may be considered, The Court finds that a tax loss amount of $75,814, the total loss amount for the counts charged in the indictment, results in a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, provide just punishment for an adequate deterrence, and to protect the public, in satisfaction of [§ 3553(a)].

J.A. 691. The Government noted an objection and proffered evidence to support its assertions, but the court did not change its ruling. The effect of this ruling was to reduce Hayes' base offense level from 16 to 14. *See* U.S.S.G. §§ 2T1.4(a)(1), 2T4.1(I) & (K) (2000).

The Government asserts that the district court erred in refusing to consider its evidence. Hayes counters that the court did not refuse to consider any evidence, but instead found such evidence insufficient to demonstrate that the Non-Indictment Losses resulted from relevant conduct.

We agree with the Government's position. The statements of the district court do not reflect any inquiry whatsoever into the adequacy of the Government's proffers. Instead, the ruling quoted above indicates that the court simply made a personal assessment of what loss amount would result in an appropriate sentence, without regard to the sentencing guidelines. However, "[t]he relevant conduct provisions are designed to channel the sentencing discretion of the district courts and to make mandatory the consideration of factors that previously would have been optional." *Witte v. United States*, 515 U.S. 389, 402 (1995); *see* U.S.S.G. § 1B1.3(a) (providing that a defendant's offense level ordinarily "*shall* be determined on the basis of" relevant conduct (emphasis added)). Thus, while the guidelines preserve a broad range of discretion for district courts, a court has no discretion to disregard relevant conduct in order to achieve the sentence it considers appropriate.

For these reasons, we must vacate Hayes' sentence and remand for further proceedings. On remand, the district court must apply § 1B1.3 to determine whether to treat some or all of the Non-Indictment Losses as part of Hayes' relevant conduct. We take no position regarding the procedures the court must follow or what its ultimate conclusion should be.

## VI.

For the reasons stated above, we affirm Hayes' convictions but vacate his sentence and remand for resentencing.

*AFFIRMED IN PART; VACATED AND REMANDED IN PART*