COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Alston and Senior Judge Clements
Argued at Richmond, Virginia


WILLIS ALFRED BRAILEY
                                                              OPINION BY
v.        Record No. 2353-08-2                    JUDGE ROSSIE D. ALSTON, JR.
                                                          DECEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                            L.A. Harris, Jr., Judge

        David B. Hargett (Hargett Law, PLC, on brief), for appellant.

        Eugene Murphy, Senior Assistant Attorney General (William C.
        Mims, Attorney General, on brief), for appellee.


        Willis Alfred Brailey (appellant) appeals his convictions of eight counts of preparing a false

tax return, in violation of Code § 58.1-348.1.[1]  Appellant first contends the trial court abused its

discretion in denying his motion for a continuance to obtain new counsel.  Appellant further

contends the evidence was insufficient to support his convictions of preparing false tax returns.  For

the reasons stated, we affirm the convictions.

                                      BACKGROUND

        On appeal, we view the evidence and all reasonable inferences flowing therefrom in the

light most favorable to the prevailing party in the trial court.  Commonwealth v. Hudson, 265 Va.

_____

        [1] Code § 58.1-348.1 provides,

                Any income tax preparer, as defined in [Code] § 58.1-302, who
                knowingly and willfully aids or assists in, counsels or advises the
                preparation or presentation of a return, affidavit, claim or other
                document required by this chapter that he knows is fraudulent or
                false as to any material matter, is guilty of a Class 6 felony.

505, 514, 578 S.E.2d 781, 786 (2003). So viewed, the evidence established that from June 1989 to November 2000, appellant worked for the Virginia Department of Taxation (Department) as a tax collections representative. Appellant's job was to ensure compliance and the proper resolution of delinquent tax liabilities, and in doing so, to review state tax returns.

After leaving his job with the Department, appellant began preparing tax returns for individuals. In 2005 and 2006, appellant prepared federal and state tax returns for several individuals, including Keith W. (Keith), Crystal W. (Crystal), Terrence W. (Terrence), Devon J. (Devon), Keith B. (Keith B.), Kareem M. (Kareem), and James K. (James).

In early 2006, Keith contacted appellant about preparing Keith's 2005 tax returns. Appellant agreed to prepare the returns in exchange for $200 in cash. Keith told appellant that he was married, that he was a truck driver, and that he made charitable contributions in the amount of $500. He provided appellant with his W-2 form, but did not give appellant any other information. Appellant also spoke to Crystal, Keith's wife. She told appellant that she was married but wanted to file her taxes as head of household. Appellant prepared the returns. He filed Keith's and Crystal's state tax returns separately, indicating on each return that the individual was single. Keith's return included itemized deductions for mileage and charitable contributions. Crystal's deductions were not itemized. The Department determined that both returns were improperly prepared because married couples may not file under single status and one spouse may not itemize deductions, while the other does not. The Department disallowed Keith's mileage deduction and a portion of his charitable contributions. After proper calculation, the Department determined that Keith owed an additional $1,235. Crystal owed an additional $159.

In March 2006, appellant prepared Terrence's 2005 tax returns in exchange for $350 in cash. Appellant asked for Terrence's birth date, his wife's birth date, and the make, model, and year of his car. Terrence gave him this information, along with his W-2 form, his mortgage forms, and

receipts from church donations. Terrence supplied no other information, and appellant prepared the returns. Terrence's state tax return included itemized deductions of $49,389, including business operating expenses, business losses, and mileage deductions, none of which Terrence supplied to appellant. The Department disallowed a substantial portion of Terrence's deductions and determined that he owed an additional $928.

In February 2006 and 2007, appellant prepared Devon's tax returns in exchange for $325 in cash. Devon told appellant that he drove his company truck approximately 2000-2500 miles per week. Devon also gave appellant his W-2 form, but provided appellant with no other information. Devon waited while appellant prepared his return. Devon's state return included approximately $30,000 in deductions, including $18,000 in mileage deductions. Devon's return included starting and ending mileage numbers for his company truck, which Devon never supplied to appellant and which were incorrect. The Department disallowed Devon's mileage deductions and determined that he owed an additional $1,382 for 2005 and $1,392 for 2006.

In February 2006, appellant prepared Keith B.'s 2005 tax returns for $350 in cash. Keith B. gave appellant his W-2 form and his statement of mortgage interest, but he did not provide appellant with any other information. Keith B. waited while appellant prepared his return. Keith B.'s 2005 state return showed $17,368 in itemized deductions, including business mileage. The Department disallowed most of Keith B.'s deductions, including those for business mileage, and determined that his adjusted gross income was $35,087, rather than $28,213, as indicated on the return. Accordingly, the Department determined Keith B.'s income should have been calculated in a higher tax bracket, resulting in a lower refund amount.

In early 2006, appellant prepared Kareem's 2005 returns. Appellant told Kareem that he could "write off" lunches and other business expenses because Kareem was a salesman. Although Kareem did not supply appellant with any information other than his W-2 form, Kareem's state

return included $16,000 in deductions, including business mileage. The Department disallowed Kareem's deductions and determined that he owed an additional $768.

In February 2006, appellant prepared James's 2005 returns for $300 in cash. James provided appellant with his W-2 form, a lottery receipt showing $2,600 in winnings, and a mileage certificate showing 90,000 miles driven on James's company truck in 2005. James's state return included $38,985 in unreimbursed business expenses, including mileage deductions. The Department disallowed James's deductions and determined that he owed an additional $1,627.

In each case, appellant filled out all the information on the returns, but had the individual sign the return as "preparer." In some cases, the individuals admitted that they were shocked or surprised by the amount of their return or that they didn't know where the numbers on the returns came from. However, each individual signed the return. A search of appellant's home computer revealed numerous copies of tax returns, including the returns for most of the above-named individuals.

In November 2007, appellant was indicted on thirteen counts of preparing false tax returns, in violation of Code § 58.1-348.1. At the start of trial, the Commonwealth moved to *nolle prosequi* one count. Appellant then requested a continuance to obtain new counsel. Both appellant and his trial counsel agreed there were problems "beyond the normal realm of navigation" and that the two did "not see eye to eye." Defense counsel requested an *in camera* discussion to avoid alerting the prosecutor to the reasons for new counsel. This request was accommodated, and counsel met with the trial judge outside the presence of the prosecutor and off the record, and explained the reasons for appellant's motion. After the *in camera* discussion, the trial court denied appellant's motion, noting for the record, that the Commonwealth had fourteen witnesses present, some from out of town, the case was previously continued on appellant's motion, and defense counsel said he was prepared to go forward. There was nothing said on the record, by

either the trial judge or counsel for appellant, regarding the circumstances associated with the *in camera* discussion.

The Commonwealth called Keith, Crystal, Terrence, Devon, Keith B., Kareem, and James. They testified that they spoke with appellant about the preparation of the returns, they paid appellant personally, and appellant presented completed returns to them. Devon and Keith B. testified that they waited at appellant's home while he prepared their returns. Appellant moved to strike the remaining twelve counts, arguing that none of the witnesses saw him prepare the returns. Appellant further argued that the evidence was insufficient to show that he willfully and knowingly used information that was false. The Commonwealth conceded that the evidence was insufficient to support four of the twelve counts. The trial court denied the motion to strike the remaining counts, and a jury found appellant guilty of eight counts of preparing false tax returns. The court sentenced appellant to forty months' incarceration and imposed a $20,000 fine. This appeal followed.

## ANALYSIS

Appellant first argues the trial court erred when it denied his motion for a continuance to obtain new counsel. Specifically, appellant contends the right to counsel of choice is derived from the Sixth Amendment to the United States Constitution and, accordingly, his constitutional rights were deprived when the trial court denied his motion. Appellant further argues that the evidence was insufficient to support his convictions because there was no evidence to show appellant prepared the returns or that he knew the information contained on the returns was fraudulent or false.

### I. Continuance to Obtain New Counsel

"[A]n accused's right to be represented by counsel includes 'not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if

- 5 -

he can provide counsel for himself by his own resources . . . to be represented by an attorney of his own choosing.'" Feigley v. Commonwealth, 16 Va. App. 717, 720, 432 S.E.2d 520, 523 (1993) (quoting Bolden v. Commonwealth, 11 Va. App. 187, 190, 397 S.E.2d 534, 536 (1990)). "[T]his right is a qualified right which is limited by a 'countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.'" Bolden, 11 Va. App. at 190, 397 S.E.2d at 536 (quoting Paris v. Commonwealth, 9 Va. App. 454, 460, 389 S.E.2d 718, 721-22 (1990)).

> The decision to grant a motion for a continuance is within the sound discretion of the [trial] court and must be considered in view of the circumstances unique to each case. The [trial] court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant.

Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007). "'In order to justify a continuance by the last minute change of counsel, exceptional circumstances must exist.'" Johnson v. Commonwealth, 51 Va. App. 369, 374, 657 S.E.2d 812, 814 (2008) (quoting Feigley, 16 Va. App. at 721, 432 S.E.2d at 523). "However, 'once a defendant is *erroneously* denied his right to counsel of choice, no additional showing of prejudice is required to make the violation complete.'" Id. (quoting London v. Commonwealth, 49 Va. App. 230, 239, 638 S.E.2d 721, 725 (2006)).

Appellant argues that we must apply the principle set out in London, and find that appellant was erroneously denied his right to counsel of choice; therefore, no additional showing of prejudice is required. However, we addressed the very same argument in Johnson and found that where a defendant waits until the last minute to request a continuance to obtain new counsel, exceptional circumstances must be shown to overcome the state's countervailing interest in proceeding expeditiously. Id. In the absence of a showing of exceptional circumstances, the trial

court has not *erroneously* denied defendant his right to counsel of choice. Id. at 375, 657 S.E.2d at 814.

> In London, . . . we reversed a trial court's denial of the defendant's continuance motion when the defendant's family retained a private attorney sixteen days before trial, the retained attorney notified the trial court twelve days before trial, and the trial court had granted no prior continuances at the defendant's request. 49 Va. App. at 239, 638 S.E.2d at 725. London, unlike [Johnson], did not involve a last minute request for a continuance, and the situation in that case did not require "exceptional circumstances."

Id. Although the defendant in Johnson retained an attorney a week prior to trial, he did not make a request to change attorneys until the morning of trial. Id. at 375, 657 S.E.2d at 815. The trial court also noted that it previously granted five continuances, at least three at defendant's request. Id. Accordingly, the Court held that exceptional circumstances did not justify Johnson's motion and the trial court did not abuse its discretion in denying the request. Id.

As in Johnson, appellant, in this case, waited until the day of trial to request a continuance for new counsel. Thus, guided by the principles outlined above, appellant must have presented exceptional circumstances to justify his last minute request. Appellant presented no "exceptional circumstances," or for that matter, any reason whatsoever for his request. The record is silent on the subject, other than the general representation by appellant that he and his counsel were having problems "beyond the realm of normal navigation" and did "not see eye to eye." Whatever specific reasons appellant had to justify the request for new counsel were discussed outside the presence of the prosecutor, and no reasons were proffered for the record. The Court "ha[s] many times pointed out that on appeal . . . the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961). Thus, it is appellant's burden to produce a record that includes the reasons presented to the trial court that justified his request for new counsel. Having failed to do so, this Court cannot

speculate as to what appellant might have argued before the trial court and can only view the facts provided in the record.

The trial court, privy to appellant's reasons for the motion, addressed the state's countervailing interest to proceed expeditiously. In denying appellant's motion, the trial court noted that a continuance was previously granted at appellant's request, the Commonwealth had fourteen witnesses present on the day of trial, and appellant's counsel stated that he was prepared to go forward. Given these circumstances, we cannot say that appellant presented exceptional circumstances to overcome the state's countervailing interest, justifying a last minute continuance request to obtain new counsel. Accordingly, the trial court did not abuse its discretion in denying appellant's motion.

## II. Sufficiency of the Evidence

Where the sufficiency of the evidence is challenged on appeal, "we must view the evidence in the light most favorable to the Commonwealth, granting to it 'all reasonable inferences fairly deducible therefrom.'" Startin v. Commonwealth, 54 Va. App. 778, 789, 682 S.E.2d 115, 121 (2009) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Higginbotham, 216 Va. at 352, 218 S.E.2d at 537; see also Code § 8.01-680. A conviction may be based on circumstantial evidence and cannot be viewed in isolation. See Commonwealth v. Hudson, 265 Va. 505, 512, 578 S.E.2d 781, 785 (2003). In a circumstantial case, the appellate court does not consider whether "there is some evidence to support" a reasonable hypothesis of innocence, but whether the fact finder, having considered all the evidence, reasonably could have rejected the defendant's theory of defense and found him guilty beyond a reasonable doubt. Id. at 513, 578 S.E.2d at 785.

Code § 58.1-348.1 makes it a crime to knowingly and willfully aid or assist in, counsel or advise, the preparation or presentation of false tax returns, knowing them to be fraudulent or false. In this regard appellant first argues that the evidence was insufficient to show that he prepared the returns.

This Court has never addressed the elements of Code § 58.1-348.1; however, federal courts have interpreted 26 U.S.C.S. § 7206(2), a statute containing similar language and nearly "on-all-fours" to the provision at issue. Section 7206(2) states in relevant part, that any person who

> [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony . . . .

"Section 7206(2) has a broad[] sweep, making all forms of willful assistance in preparing a false return an offense." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1454 (9th Cir. 1986) (citing United States v. Haynes, 573 F.2d 236, 240 (5th Cir. 1978)). "'[T]he scope of the statute extends to all participants of a scheme[,] which results in the filing of a false return, whether or not those parties actually prepare it.'" United States v. Hooks, 848 F.2d 785, 791 (7th Cir. 1988) (quoting United States v. Siegel, 472 F. Supp. 440, 444 (N.D. Ill. 1979)).

The relevant language of Code § 58.1-348.1 tracks the language of the federal statute, and, thus, we find the interpretation of the federal statute persuasive in our analysis. Code § 58.1-348.1, like the federal statute, makes it a crime to "aid," "assist in," "counsel," or "advise" the preparation of returns. A statute "should be read to give reasonable effect to the words used 'and to promote the ability of the enactment to remedy the mischief at which it is directed.'" Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995) (quoting Jones v.

Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)). In providing such expansive language in Code § 58.1-348.1, it was clearly the legislature's intention to criminalize all conduct related to the preparation of false tax returns, not simply the actions of the person preparing the return. Thus, we find the Commonwealth need not prove that appellant prepared the returns at issue; rather, the Commonwealth need only prove that appellant aided, assisted, counseled, or advised in the preparation of the returns. From the record, it is clear the evidence was sufficient to support such a finding.

Appellant spoke with each individual about his or her income and possible deductions. Appellant collected information relevant to the preparation of the returns. He asked for and accepted payment in cash from each individual. He delivered the prepared returns to each individual. Both Devon and Keith B. waited at appellant's home while the return was prepared. Finally, appellant's home computer contained copies of many of the returns. From this evidence, a reasonable fact finder could certainly conclude, beyond a reasonable doubt, that appellant knowingly and willfully aided, assisted, counseled, or advised in the preparation of the eight returns.

Appellant further argues that the evidence was insufficient to show that he knew the information contained on the returns was false. Specifically, appellant argues that the Commonwealth did not present evidence sufficient to exclude the reasonable hypothesis that he made mistakes on the returns.

Appellant contends that in every case, there was a reasonable explanation justifying a mistake. He argues that in Crystal's case, she told appellant she wanted to file as head of household, thereby creating an inference that she was single. In addition, appellant notes that Devon admitted that he and appellant discussed mileage and accordingly, appellant argues he was simply mistaken in his mileage estimates. Furthermore, appellant notes that Kareem admitted that

- 10 -

he was a traveling salesman. Thus, appellant contends, it was reasonable for appellant to believe Kareem had business deductions. Finally, appellant correctly notes that James provided a mileage certificate, and the only false information asserted by the Commonwealth as to James was that the mileage numbers on the return were incorrect. Appellant contends again, he was simply mistaken in his mileage estimates. Appellant argues that in every other case, the individuals signed their returns without pointing out mistakes or questioning the numbers used by appellant. Therefore, appellant argues, the evidence was insufficient to prove he knew the information contained on the returns was fraudulent or false.

However, viewing the evidence in the light most favorable to the Commonwealth, as we must, we cannot say that appellant's hypothesis of mistake is reasonable. Each of the Commonwealth's witnesses testified that he or she gave appellant very specific information and that other information was included on the return that the individual did not provide. Both Keith's and Crystal's returns were filed using the single filing status, despite appellant's conversation with both of them discussing the fact that the two were married. Further, appellant used exaggerated, if not completely made up, business expenses and mileage deductions on every return. Keith's return included mileage deductions that Keith said he did not provide. Devon's return contained $18,000 in mileage deductions, including starting and ending mileage for the year. Devon never supplied those numbers to appellant, and Devon testified that the numbers included on the return were, in fact, incorrect. Terrence's return included business operating expenses, business losses, and mileage deductions, none of which Terrence supplied to appellant. Keith B.'s return contained over $17,000 in itemized deductions, including business mileage deductions. Again, Keith B. testified that he never supplied appellant with those numbers. Kareem gave appellant only his W-2 form, yet his return contained $16,000 in business deductions, including mileage deductions. Finally, James's return contained almost $39,000 worth of

- 11 -

unreimbursed business expenses, including mileage deductions.  Although James gave appellant a mileage certificate showing 90,000 miles driven that year, James also gave appellant his W-2 form, indicating the vehicle belonged to his company.  Thus, James was not entitled to mileage deductions.

Based on the cumulative evidence, appellant cannot assert that he was mistaken about certain returns in which the individual did provide some of the reported deductions.  See United States v. Hayes, 322 F.3d 792, 798 (4th Cir. 2003) (holding that repeated use of the same false deduction supplies evidence of appellant's knowledge that those numbers were false).  In Hayes, the Fourth Circuit Court of Appeals was confronted with circumstances substantially similar to those in the instant case.  Hayes was indicted on twenty-four counts of fraudulent tax preparation, in violation of 26 U.S.C.S. § 7206(2).  Id. at 795.  Hayes's customers testified that Hayes substantially overstated some of their deductions, primarily for charitable contributions and medical expenses.  Id. at 796.  Hayes denied fabricating any of the numbers used on the returns.  Id.  The witnesses testified that they provided Hayes with certain information that did not include medical deductions; yet in every case, the return included substantial medical deductions.  Id.  The Court held,

> [i]n light of the general reliability of business records and the substantial similarities between the errors on the . . . returns and false deductions noted on other returns prepared by Hayes, a jury could reasonably conclude that Hayes fabricated the incorrect figures on the . . . returns.  Accordingly, the evidence was sufficient to support Hayes' convictions.

Id. at 799.  In one case, the witness asserted that she did in fact have medical deductions of $13,000 for the year.  Id. at 798.  However, the court found the evidence sufficient to convict Hayes of fraudulently including a $14,000 medical deduction on her return, in part because "this figure . . . resemble[d] false medical deductions claimed by Hayes in other returns he prepared." Id.

The Fourth Circuit's reasoning in <u>Hayes</u> is applicable to the instant case. Based on the substantial similarities among the errors on all the returns and the witnesses' testimony that they did not give appellant information about mileage or other business deductions, a reasonable fact finder could determine that appellant simply fabricated the numbers on the returns.

Further, appellant's argument that the individuals signed the returns without pointing out mistakes in the information provides no defense. The fact that the individuals may have known their returns were false does not exculpate appellant under Code § 58.1-348.1.

Finally, and especially significant in this case, is the fact that appellant worked for the Department for eleven years. As a tax collections representative, his job was to review state tax returns and ensure both businesses and individuals complied with the requisite tax laws. In this capacity, a fact finder would be justified in finding it incredible that appellant did not know the proper method of preparing tax returns. Accordingly, we find the evidence sufficient to prove, beyond a reasonable doubt, that appellant knew the information included on the returns was fraudulent or false.

CONCLUSION

For these reasons, we find the trial court did not abuse its discretion in denying appellant's request for a continuance to obtain new counsel on the day of trial. Additionally, the evidence was sufficient to support appellant's convictions for eight counts of preparing false tax returns. Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>