COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia


KAYLA DANIELLE MOORE, A/K/A
  KAYLA DANIELLE WOOD
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 1035-22-3                    JUDGE STUART A. RAPHAEL
                                                       JUNE 6, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Jennifer T. Stanton, Senior Appellate Attorney (Indigent Defense
Commission, on briefs), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Kayla Moore was convicted of possession of methamphetamine

with intent to distribute and knowingly permitting an unauthorized person to drive a motor

vehicle.  On appeal, Moore argues that the trial court erred when it denied her last-minute request

for a continuance to retain counsel of her choice.  She also claims that the Commonwealth failed

to present evidence sufficient to prove beyond a reasonable doubt that she had the intent to

distribute methamphetamine.  And she argues that the trial court abused its discretion by

overlooking her mitigating evidence during sentencing.  Finding none of her arguments

meritorious, we affirm the judgment below.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

*A. Arrest*

Corporal Stanley Tomlin of the Rockbridge County Sheriff's Office was assisting the drug task force with a search for a wanted person[1] when he observed a black Nissan Pathfinder pull out of a parking lot in front of him. The Nissan's tags looked "scuffed up," indicating to Tomlin that they had been transferred from one car to another. Tomlin also noticed that the stickers were scratched, "which . . . didn't appear normal." He radioed his dispatcher to run the tags, and he followed the Nissan as it pulled into a Shell station. The dispatcher reported that the tags belonged to a Dodge pickup truck, not a Nissan Pathfinder.

Tomlin pulled up behind the Nissan as the male driver, whom Tomlin recognized as Cody Wood, exited the vehicle. Wood told Tomlin that the car and tags belonged to his girlfriend, Kayla Moore, who was in the car with the couple's child. Wood's license had been revoked, so Tomlin went to the passenger side of the vehicle and asked Moore why she had let Wood drive the car. Moore said that although Wood was unlicensed, she did not feel comfortable driving the car herself because it had a power-steering issue.

_____

[1] The wanted person was unrelated to this case and was neither Kayla Moore nor Cody Wood.

- 2 -

The child in the backseat threatened to kill Tomlin if he arrested Wood. Believing that Moore and Wood were involved with drugs, Tomlin returned to his vehicle and retrieved his service dog to perform an open-air sniff on the Nissan. The canine alerted to both the passenger- and driver's-side doors. Three other drug-task-force members were present at the scene with Tomlin: Sergeant Terry Martin, Officer Robert Smith, and Investigator Philip Flint.

The officers instructed Moore to exit the vehicle so they could search it. Moore tried taking a large bag with her but opted to leave it in the vehicle when Tomlin said the officers would need to check it for weapons. Following a brief search of Moore's person, during which she was asked to pull out her jacket pockets and hold open her jacket, the officers allowed Moore to take her wallet and her child into the convenience store at the gas station. Because the officers at the scene were all men, they did not perform a more intrusive pat-down search of Moore.

Tomlin searched the passenger's side of the vehicle, starting with the large bag Moore had left behind. Inside, he found a glitter container and a small baggie, both of which held a small amount of a "crystal white substance" that Tomlin believed to be methamphetamine.[2] And in the car, Tomlin found a set of digital scales and a glass pipe. Martin searched the driver's side of the vehicle, where he found a knife with a handle that could be used as brass knuckles and a black case that contained honey butane wax and two glass smoking devices.

Meanwhile, Smith and Flint stood outside and watched Moore through the windows of the convenience store as she walked up and down the aisles. They briefly lost sight of her when she entered the restroom, but she emerged a couple of minutes later, continued shopping, and checked out at the register. Moore then exited the store and took her child to sit at a nearby picnic table. Their suspicions roused, Smith and Flint decided to look inside the store. Inside the

---

[2] Field testing confirmed that the glitter container had a small amount of methamphetamine, but it was not sent to the lab. The small baggie was sent to the lab for testing, which confirmed that it, too, contained a small amount of methamphetamine.

cavity of the plunger in the women's restroom, they found a gray velvet bag. When they opened the bag, they found what testing later confirmed to be 20 grams of methamphetamine, separated into smaller bags.

Outside, Tomlin handcuffed Moore and put her in the back of his patrol vehicle. Smith approached, advised Moore of her *Miranda*[3] rights, and asked her about the items in the plunger. At first, Moore denied knowing anything about the gray velvet bag. But she eventually admitted that the bag belonged to her and to Wood, that it contained methamphetamine, and that she had hidden it in the plunger.

*B. Trial and Jury Sentencing*

Moore's jury trial was scheduled for Monday, December 6, 2021. On Thursday, December 2, Moore advised her two public defenders that she wished to retain counsel of her choice. On Friday, Moore contacted an attorney named Cam Warren, but attempts to tender payment failed. Also that Friday, Moore's public defenders notified the trial court that Moore would request a continuance when she appeared for trial on Monday.

Moore appeared on December 6 and moved for a continuance so she could "[u]s[e] her Sixth Amendment right to" retain counsel of her choice. Moore still had not paid Warren; she told the trial court she was working on it and would "likely" successfully retain him "within hours or days." She said that her purpose was not to delay trial, as she was incarcerated at the time without bond. Rather, Moore said she was unsatisfied with her public defenders.

In response, the court noted that it had spoken with Warren on the phone in the presence of her current defense counsel. In that conversation, Warren confirmed that Moore had contacted and attempted to pay him. But Warren also reported that Moore's credit card numbers had been declined and that he had not yet been retained.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

When asked for her plea, Moore pleaded not guilty. When asked if she was satisfied with the services of her lawyers, Moore answered: "Well, no sir. That's why I was trying to obtain one . . . ." The court accepted Moore's not-guilty pleas and denied her request for a continuance.

Before the jury entered, Moore proffered for the record that she "ha[d] the money and means to pay for a new lawyer." The court asked how that was possible—Moore had been incarcerated without income for several months and told the court in August that she was on food stamps. Moore explained that her financial position had changed when she received two payments of $1,000 from the Monacan Indian Nation following the COVID-19 outbreak. She said she had $2,448 on a pre-paid card that could be used to retain counsel. The court responded: "That doesn't change my mind. Let's bring [the jury] in."

Corporal Tomlin, Sergeant Martin, Officer Smith, and Investigator Flint all testified. Because Flint had handled "well over a thousand" drug-related cases during his career, the Commonwealth offered and the court received him as "an expert in the use, packaging and distribution of narcotics."

The Commonwealth asked Flint to assess the evidence: the individual bags of methamphetamine found in the larger gray velvet bag, the certificate of analysis showing the amount of the drug found, and the scales with residue on them. Flint responded that he "would not consider that consistent with personal use." He had never seen someone who was "just a user" possess 20 grams of methamphetamine; in Flint's experience, users buy only a gram or an "eightball" (3.5 grams) at a time. But for dealers, "it's a lot more beneficial . . . to buy it by the ounce . . . and break it down into individual smaller amounts." There are about 28 grams in an ounce, and Moore possessed almost 20 grams of methamphetamine.

Flint also noted that the individual bags were tied with the tops cut off; he explained that the resulting "triangular shape [is] common . . . in the distribution realm." The scales, too, were

an "indication of distribution," but Flint acknowledged that it was also "common" for users to carry scales "to make sure that they're getting the right amount." The smoking devices, which Flint called an "indication of usage," as well as the absence of a large amount of cash led Flint to conclude that Moore and Wood were users who paid for their habit by dealing and had recently "re-upped," meaning "they had taken the cash . . . and bought a large quantity."

After the jury retired for deliberation, Moore informed the court that earlier in the day, around lunchtime, her family had successfully retained counsel on her behalf. The court responded that Moore had not retained counsel by the trial's scheduled start time, the trial had previously been continued at Moore's request,[4] the court notified Moore of the trial date more than a month in advance, the court was notified of Moore's desire for a continuance only one business day before trial, and Moore's reason for the request was dissatisfaction with her public defenders.

The jury convicted Moore of possession with intent to distribute more than 10 grams of methamphetamine, a Schedule I or II controlled substance, in violation of Code § 18.2-248. It also found her guilty of knowingly permitting an unauthorized person to drive a motor vehicle in violation of Code § 46.2-349.

Moore had requested jury sentencing, so both parties presented additional evidence following the verdict. The Commonwealth introduced Moore's six prior convictions. Moore's grandmother, Linda Camden, took the stand for the defense. Camden told the jury that Moore had two children, ages 6 and 11, both of whom lived with Camden at the time despite her declining health. She described Moore as a hard worker but acknowledged that Moore struggled with her mental health. Moore was diagnosed with bipolar disorder at a young age but did not

---

[4] We recognize that the parties disagree—and that the record is unclear—about whether Moore had previously requested that the trial be continued on the possession-with-intent-to-distribute charge.

receive the help she needed.  In Camden's view, medical treatment, not prison, would provide Moore with the best chance at becoming a productive citizen.

The jury recommended a sentence of eight years for possession with intent to distribute and a $250 fine for permitting an unauthorized person to drive a motor vehicle.

### C.  Guilty Pleas and Sentencing Hearing

On December 8, 2021, Moore entered guilty pleas on several additional charges: two counts of possession of drugs in violation of Code § 18.2-250, two counts of petit larceny, third or subsequent offense, in violation of Code §§ 18.2-96 and 18.2-104, one count of prisoner possession of an unlawful chemical compound in violation of Code § 53.1-203(5), and one count of possession of paraphernalia in violation of Code § 54.1-3466.

Moore's sentencing hearing for all the offenses at issue was held on May 24, 2022. Heather Early, a family friend, testified for the defense.  Early's testimony revealed that Moore's mother was incarcerated at the time "for similar charges" and that Moore's third child had been born while Moore was incarcerated.

Moore asked for leniency.  She described the difficulty of having a child while in jail and explained that her grandmother, the children's caretaker at the time, was very ill.  She promised that she would get a job and attend probation meetings upon release and that she had a place to live.  She also explained that her drug use resulted from the physical and mental abuse she suffered at the hands of her stepfather during childhood.

Although it acknowledged Moore's "heartbreaking situation," the court said that "[w]e all have a job we have to do in the justice system and that's what I have to do today."  On the two charges that went to trial, the court sentenced Moore, consistent with the jury's recommendation, to eight years' incarceration with no time suspended.  On the other charges, she was sentenced to 11 years and 100 days with all but 12 months suspended.  The court also convicted Moore of one

pretrial violation and sentenced her to 10 days in jail, all suspended. Moore's active sentence totaled 8 years and 12 months.

ANALYSIS

A. *The trial court properly denied Moore's continuance request (Assignment of Error 1).*

Moore first argues that the trial court abused its discretion when it denied her the opportunity to retain counsel of her choice, in violation of her Sixth Amendment rights. "A motion for a continuance . . . is addressed to the sound discretion of the trial court whose decision will not be reversed unless the record affirmatively shows an abuse of such discretion." *Smith v. Commonwealth*, 68 Va. App. 399, 420 (alteration in original), *aff'd*, 296 Va. 450 (2018). "A trial judge has broad discretion in determining whether a continuance to obtain counsel is necessary in order to preserve the accused's right to assistance of counsel." *Reyes v. Commonwealth*, 68 Va. App. 379, 385 (2018) (quoting *Johnson v. Commonwealth*, 51 Va. App. 369, 374 (2008)), *aff'd*, 297 Va. 133 (2019). There is no abuse of discretion "unless [the trial court] makes 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.* (quoting *Feigley v. Commonwealth*, 16 Va. App. 717, 721 (1993)).

> [A]n accused's right to be represented by counsel includes "not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if he can provide counsel for himself by his own resources . . . to be represented by an attorney of his own choosing."

*Brailey v. Commonwealth*, 55 Va. App. 435, 443 (2009) (alterations in original) (quoting *Feigley*, 16 Va. App. at 720). But "[t]his right is a qualified right which is limited by a 'countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.'" *Id.* (second alteration in original) (quoting *Bolden v. Commonwealth*, 11 Va. App. 187, 190 (1990)). "In order to work a delay by the last minute change of counsel, exceptional

circumstances must exist." *Shifflett v. Commonwealth*, 218 Va. 25, 30 (1977). And "[i]n the absence of a showing of exceptional circumstances, the trial court has not *erroneously* denied defendant his right to counsel of choice." *Brailey*, 55 Va. App. at 444.

The trial court's denial of Moore's request was not "unreasoning and arbitrary" and therefore did not constitute an abuse of discretion. *London v. Commonwealth*, 49 Va. App. 230, 236 (2006) (quoting *Paris v. Commonwealth*, 9 Va. App. 454, 461 (1990)). Jurors and witnesses were present and prepared to proceed. And it was unclear when or if Moore could retain counsel—she provided an uncertain timeframe ("within hours or days") and had attempted to pay Warren with several credit card numbers, all of which had been declined. Moore also knew of the trial date more than a month in advance but failed to provide a reason for her delayed request.[5]

Moore has also failed to show that her last-minute continuance request—made the morning of trial—was justified by exceptional circumstances. *See Shifflett*, 218 Va. at 30. The main reason she gave was her general dissatisfaction with her public defenders. But the court found her counsel to be "competent . . . notwithstanding that there may be some differences of opinion on matters of strategy." And though Moore claimed to have recently received $2,000, she was still, as of the morning of trial, unable to retain counsel. The trial court therefore did not "*erroneously* den[y] defendant [her] right to counsel of choice." *Brailey*, 55 Va. App. at 444.

We disagree with Moore that Code § 19.2-159.1(B) required the trial court to grant a continuance. The statute provides that

> [i]n the event the defendant undergoes a change of circumstances so that he is no longer indigent, the defendant shall thereupon obtain private counsel and shall forthwith advise the court of the change of circumstances. The court shall grant reasonable

---

[5] The court also noted that the trial had previously been continued at Moore's request. Whether that is correct does not change our analysis.

continuance to allow counsel to be obtained and to prepare for trial.

Code § 19.2-159.1(B).  But as the Supreme Court explained in *Reyes v. Commonwealth*, 297 Va. 133 (2019), "Code § 19.2-159.1 confers no rights on defendants, so they are entitled to no remedy under the statute if a court declines to substitute counsel and grant a continuance for him or her to prepare." *Id.* at 142.  Instead, the statute was intended "to minimize taxpayers' responsibility for paying the costs of court-appointed counsel for criminal defendants who can afford to pay for counsel themselves." *Id.* at 140.  So a "defendant is harmed only if his or her constitutional rights are violated, and that determination is evaluated according to familiar Sixth Amendment precedents." *Id.* at 142.  Having already applied those precedents and found no violation, we conclude that the trial court did not err when it denied Moore's continuance request.

### B. *The evidence sufficed to show that Moore possessed methamphetamine with intent to distribute (Assignment of Error 2).*

To obtain a conviction under Code § 18.2-248, the Commonwealth needed to prove that Moore possessed a controlled substance with the intent to manufacture, sell, give, or distribute the substance.  Moore argues that the Commonwealth failed to prove beyond a reasonable doubt the specific intent to distribute.  But taking the evidence in the light most favorable to the Commonwealth, *Hammer*, 74 Va. App. at 231, the jury could reasonably find that she had the requisite intent.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

There was enough evidence to prove Moore's intent to distribute that we cannot find the jury's verdict "plainly wrong or without evidence to support it." *McGowan*, 72 Va. App. at 521. She possessed almost 20 grams of methamphetamine. Investigator Flint, "an expert in the use, packaging and distribution of narcotics," testified that even with "well over a thousand" drug-related cases under his belt, he had never seen someone who was "just a user" possess so much methamphetamine. And it was "beneficial" for methamphetamine dealers to "buy it by the ounce," whereas users would, in Flint's experience, purchase only a gram or an "eightball" at a time. The scales, too, were "an indication of distribution," as were the bags of methamphetamine that had been tied and cut into triangles.

The evidence that Moore was a drug user—the smoking devices, honey butane wax, and scales—does not render the jury's verdict unreasonable. Flint drew a logical inference that Moore and Wood were users who paid for their habit by dealing. The evidence suggested that the pair had recently "re-upped," which explained the lack of large amounts of cash. On appeal, the Court reads "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Perkins*, 295 Va. at 324). And Flint's inferences are fairly deduced from the evidence. So the fact that Moore was also a user did not preclude a finding that she was a dealer.

Moore postulates two hypotheses of innocence: (1) that Wood's drug use, together with her own, accounted for the amount of methamphetamine recovered and (2) that Wood, not

Moore, was a dealer. Moore fails to identify where in the record she sufficiently preserved these arguments in the trial court. Rule 5A:18.

But even assuming those arguments were preserved, the evidence was sufficient for a reasonable factfinder to reject them. Moore carried the gray bag with nearly 20 grams of methamphetamine with her into the bathroom, where she hid it in the toilet plunger. She admitted to Smith that the drugs belonged to both her and Wood. The glitter container and small baggie that contained small amounts of methamphetamine were found in the large bag that Moore tried to take with her into the convenience store. And the car in which the officers found the scales and smoking devices belonged to Moore, not Wood. Even if the jury attributed only half of the methamphetamine to Moore, the 10 grams recovered would still be three to ten times the amount Flint testified would have been typical for mere personal use.

Because a rational jury could have found beyond a reasonable doubt that Moore had the intent to distribute methamphetamine, we reject Moore's sufficiency argument. *See Vasquez*, 291 Va. at 248.

### C. *Moore's sentence was not an abuse of discretion (Assignment of Error 3).*

Lastly, Moore argues that the trial court abused its discretion when it imposed an active sentence of 8 years and 12 months because it either ignored or failed to properly weigh mitigating factors. "The determination of sentencing lies within the sound discretion of the trial court. A sentencing decision will not be reversed unless the trial court abused its discretion." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

It was within the trial court's purview to weigh the mitigating evidence Moore presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, [we] must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

With those considerations in mind, we cannot say that the trial court abused its sentencing discretion here. The court considered Moore's mitigating evidence. It "did listen to everything [Moore] had to say." The court acknowledged the "heartbreaking situation," particularly for Moore's children. The court also acknowledged Moore's "redeeming" qualities. And the sentence was within the statutory ranges. *See* Code §§ 18.2-248, 18.2-250, 18.2-96, 18.2-104, 53.1-203(5), 54.1-3466. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

## CONCLUSION

We find no reversible error here. The trial court's denial of Moore's request for a continuance was not an abuse of discretion. The jury's determination that Moore had the intent to distribute methamphetamine was not plainly wrong or without evidence to support it. And Moore's sentence was within the statutory ranges set by the legislature.

*Affirmed.*