# Richmond.

## Georgia May Brown v. Commonwealth.

### March 18, 1926.

1. Delinquent, Dependent and Destitute Children—*Summons—Change in Summons After Service by Insertion of Names of Children.*— A summons was duly issued directing a police officer to summon a mother and her two children to appear before the Juvenile and Domestic Relations Court of the city of Richmond. It was assigned as error that the original summons which was served on the accused was defective, and that changes were made therein after it had been issued by the judge. The only change made was the insertion of the names of the two children. This addition to the summons was unnecessary. The warrant fully identified the children. The insertion of the names of the children by the judge, somewhere in his record of the case, was certainly proper as a means of identification, and there is no better place to insert the names in such a court than in the original warrant; but the same purpose could have been accomplished by a memorandum endorsed thereon.

2. Juvenile and Domestic Relations Court—*Summons—Amendment or Issuance of Warrants—Section 1909 of the Code of 1919.*—Code of 1919, section 1909, which provides for service of summons, contains this provision: "If the child mentioned in the petition be present in court, no summons of said child shall be necessary to give the court jurisdiction of such child," and such justices are unquestionably vested with the same general powers with respect to the amendment or issuance of warrants as are conferred upon justices of the peace.

3. Delinquent, Dependent and Destitute Children—*Summons—Objection to Irregularity.*—A widow and her two children were summoned to appear before a juvenile and domestic relations court. The widow and her children appeared in court, with counsel, and no objection was then made, either to the regularity of the summons for the children, or to that for the widow as their natural guardian.
   *Held:* That it was too late to object to the regularity of the summons for the first time on appeal.

4. Delinquent, Dependent and Destitute Children—*Recognizance to Secure Appearance of Children—Failure to Produce Children as Contempt—Case at Bar.*—A mother and her two children were summoned to appear before a juvenile and domestic relations court and did

appear, and upon the case being continued the mother entered into recognizances for the appearance of the children upon the date to which the case was continued.  Having secured the custody of the children under these recognizances, in a proceeding which was perfectly regular, the only question in contempt proceedings against the mother for failure to produce the children was whether or not she produced the children or offered any excuse for failure to produce them at the time and place specified.  As to this, the evidence was uncontradicted.  It was clear that she concealed the children so that the officers of the court neither could find nor take them in custody, and she persistently refused to produce them in accordance with the requirements of the recognizances.  That she had been guilty of a flagrant contempt of the court and the statute was apparent.

5. Contempt—*Juvenile and Domestic Relations Court—Section 1950a of the Code of 1924.*—Acts of 1922, p. 829, vests the judges-of the juvenile and domestic relations courts with power to punish for contempt.

6. Juvenile and Domestic Relations Court—*Contempt—Constitutionality.*—Statutes creating juvenile and domestic relations courts seem to have been generally upheld.  Unless such a court can protect its jurisdiction from deliberate disregard of its orders, its purpose will be largely frustrated, because in the nature of things its orders frequently operate upon those who are habitually contumacious, and who have been haled to the court only because of their disregard of the common duties and decencies of civilized communities.

7. Contempt—*Power to Punish for Contempt—Reason for Conferring the Power.*—The power to punish for contempt is not given for the vindication of the judge, nor primarily for the punishment of the offender, but is necessary to enforce the sanctions of the law.

Error to a judgment of the Hustings Court of the city of Richmond.

*Affirmed.*

The opinion states the case.

*Wendenburg & Haddon* and *John P. Flanagan,* for the plaintiff in error.

*John R. Saunders,* Attorney-General, *Leon M. Bazile* and *Lewis H. Machen,* Assistant Attorneys-General, for the Commonwealth.

Prentis, P., delivered the opinion of the court.

Georgia May Brown has been sentenced to ten days confinement in the jail of the city of Richmond, as for a contempt of the juvenile and domestic relations court of that city, and has sued out a writ of error from the judgment of the Hustings Court of the city of Richmond, pronounced on an appeal from the juvenile and domestic relations court.

This is a fair statement of the facts shown by the record: On March 17, 1925, a petition was filed in the Juvenile and Domestic Relations Court, properly sworn to by two police officers, in which it was alleged that two children were on that day under improper parental care and guardianship; that they were then in the custody of their mother (the accused). A summons was duly issued, directing a police officer to summon the Brown children (2), 805½ east Leigh street, children under the age of eighteen years, to appear before the court, and that their mother should also be summoned to appear with the said children, each of them then and there to show cause why the children should not be dealt with as dependent, neglected children, according to the provisions of the statute (Code, section 1908). This warrant was duly served in accordance with Code, section 1909, upon their mother, Georgia May Brown, their father being dead, and the officer who served it learned the names of the children. After the warrant was returned, and before any further proceedings, the clerk of the court entered upon the warrant the names of the children, Helen May Brown and Howard D. Brown. One of them is five and the other four years of age. These children were carried by their mother to the detention home of the court, and there was a recognizance given by her, taken by a justice of the peace, for their appearance at the juvenile court on March 19, 1925. The

mother appeared with her children on that date, and upon their motion the case was continued to April 2, 1925, her recognizance, with surety, being taken for the appearance of the children on the last named date. On that date, upon her motion, the case was again continued, and a new recognizance entered into by her for the appearance of the children on the 9th of April, 1925. She failed either to appear or to produce the children on that date, to which the case had been continued upon her motion; whereupon an attachment was issued for the children. On April 10, the accused with her attorney appeared before the juvenile court judge, when an attachment, charging her with disobedience of the lawful process of that court was issued. The hearing was continued until April 18, 1925. On that date she was sentenced to ten days confinement in the city jail, from which judgment there was an appeal to the Hustings Court of the city of Richmond, and the judgment was there affirmed. She still failing to produce the children, on May 2, 1925, a second attachment for contempt of the juvenile court was issued, upon which she was tried, convicted and sentenced to ten days confinement in the city jail. She appealed from this judgment to the Hustings Court of the city of Richmond, and that court affirmed the judgment and sentence. It is from this judgment that this writ of error is being here prosecuted.

It seems to us that a fair statement of these facts is sufficient to show that there is no error in the judgment.

It is not necessary to quote in full the statute creating the juvenile and domestic relations court. It is a carefully drawn statute creating a court, not of record, and represents the modern view that neglected and dependent children, whose parents fail to discharge their

parental obligations are wards of the Commonwealth, and should have fostering care.

[1] One of the assignments of error is that the original summons which was served on the accused was defective, and that changes were made therein after it had been issued by the judge. We have stated precisely the only change made—that is, the insertion of the names of the two children. This addition to the summons was unnecessary. The warrant fully identified them as the two Brown children, in the custody of their mother, living at 805½ east Leigh street. The insertion of the names of the children by the judge, somewhere in his record of the case, was certainly proper as a means of identification, and we know of no better place to insert the names in such a court than in the original warrant; but the same purpose could have been accomplished by a memorandum endorsed thereon.

[2] Code, section 1909, which provides for service of summons, contains this provision: "If the child mentioned in the petition be present in court, no summons of said child shall be necessary to give the court jurisdiction of such child," and such justices are unquestionably vested with the same general powers with respect to the amendment or issuance of warrants as are conferred upon justices of the peace.

[3] The children and the accused were all three present in court on March 19th, with counsel, and no objection was then made, either to the regularity of the summons for the children, or to that for the accused as their natural guardian. The objection is entirely without merit, but if this were not so, it is too late now to make it. *Harley* v. *Commonwealth*, 131 Va. 664, 108 S. E. 648.

[4, 5] The two recognizances, one for each child,

for the violation of which the accused has been prose-
cuted, each recite that the child, together with its
mother, the accused, personally appeared in court to
answer the allegations of the petition, and that on the
motion of her counsel the hearing of the case was con-
tinued until April 9, 1925, and that the accused re-
quested that the child be released in her custody until
that date; that her request was granted upon condition
that she furnish surety in the sum of $300 for the
appearance of her child before the court on that date,
and then follows the acknowledgment of the surety
and the condition of the recognizance in the usual
form. Having secured the custody of the children under
this recognizance, in a proceeding which was perfectly
regular, the only question, so far as the immediate
proceeding is concerned, is whether or not she pro-
duced the children or offered any excuse for failure
to produce them at the time and place specified. As
to this, the evidence is uncontradicted. It is clear that
she concealed the children so that the officers of the
court could neither find nor take them in custody, and
she has persistently refused to produce them in accord-
ance with the requirements of the recognizance. The
children when originally produced in court became
subject to the jurisdiction of the court, and were re-
leased in her care and custody only in response to her
request. That she has been guilty of a flagrant con-
tempt of the court and the statute is apparent, and
when this is so, Code, section 1950a, Acts 1922, p.
829, vests the judges of such courts with power to
punish for contempt in this language: "The said special
justice shall have the same powers in matters of con-
tempt as are conferred on courts and judges by the
general law, but in no case shall the fine exceed fifty
dollars and imprisonment exceed ten days for the same

contempt. From any such fine or sentence, an appeal shall be allowed as appeals are allowed from such justices in other cases affecting adults, and the proceedings in such appeals shall conform in all other respects to the provisions of section 4523 of the Code of Virginia."

[6, 7] Statutes creating such courts seem to have been generally upheld, and in *Moore* v. *Williams*, 19 Cal. App. 600, 604, 127 Pac. 509, 510, it is said: "Juvenile courts * * are the creation of modern philanthropic endeavor and are designed to, and in fact do, provide a most excellent means of restraining and reforming wayward persons who, unchecked, may become a menace to society."

And this in *Ex Parte Powell*, 6 Okl. Cr. App. 495, 508, 120 Pac. 1022, 1028: "The fundamental doctrine upon which governmental intervention in * * * such cases is based is that the moment a child is born he owes allegiance to the government of the country of his birth, and is entitled to the protection of that government for his person, as well as his property. In order to discharge this duty of protection, the government, by way of safeguard and for the benefit of the infant, places him under guardianship; but it is only that there may be best secured to him the assistance and protection of law, and that he may acquire that education which will enable him afterwards to discharge the duty which he owes to his country as well as to himself.

"The legislature not only has the power to enact such provisions as those under consideration, but that it is the duty of the State in its character of *parens patriae* to do so. The performance of such duty is justly regarded as one of the most important governmental functions, and a constitutional limitation must be so understood as not to interfere with its proper and legitimate exercise."

Unless this juvenile court can protect its jurisdiction from such deliberate disregard of its orders, its purpose will be largely frustrated, because in the nature of things its orders frequently operate upon those who are habitually contumacious, and who have been haled to the court only because of their disregard of the common duties and decencies of civilized communities. The power to punish for contempt is not given for the vindication of the judge, nor primarily for the punishment of the offender, but is necessary to enforce the sanctions of the law, and this has been thus expressed in the case of *Elam* v. *Commonwealth*, 4 Va. L. Reg., 520: "Under every form of government which is able to maintain its own existence, there must always be somewhere a sovereign authority with power to enforce all of its own decrees. Under our system, the people themselves claim and hold this sovereignty. From them the courts and all the other departments of the government derive their limited powers. The sovereign people express their will or law through their agents, and when expressed, all citizens owe it their respect and allegiance.

"The courts, by the will of the sovereign people, are entrusted with so much of this ultimate sovereignty as is necessary for the due administration of justice. Any attack upon them, therefore, certainly while in the act of administering justice, is an attack upon the sovereign people, whom the courts simply represent and serve. It is an assault upon the government which the people have ordained."

The judgment will, therefore, be affirmed.

*Affirmed.*