# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Fulton and Lorish
Argued by videoconference


MAN K. NGUYEN

MEMORANDUM OPINION[*] BY
v.        Record No. 0517-22-4                    JUDGE LISA M. LORISH
JUNE 27, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Charles S. Sharp, Judge Designate

Sean A. Sherlock (King, Campbell, Poretz & Mitchell, PLLC, on
brief), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Man K. Nguyen posted bond as a surety bail bondsman for the release of Ibrahim Elkahlil

Bouaichi who was being held on several charges in the Circuit Court of the City of Alexandria

committed against K.D.G.  In doing so, he signed a recognizance agreeing he would "obey all of

the terms and conditions" on the recognizance form.  One such term was that Bouaichi was to

remain at his parents' home.  During the next couple of months, Nguyen repeatedly invited

Bouaichi to leave his parents' home to come to work with Nguyen and hang out as friends.

Nguyen eventually invited Bouaichi to stay at Nguyen's home while Nguyen was on vacation.

While Nguyen was out of town, Bouaichi stole his gun and car and murdered K.D.G.  The

Commonwealth sought a capias from the circuit court for Nguyen for contempt of court for

violating the recognizance.  The court issued the capias, then tried and convicted Nguyen of

criminal contempt.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

Nguyen argues on appeal that the trial court erred in finding sufficient evidence to convict him of contempt, finding his request to proceed *pro se* at trial was voluntary, knowing, and intelligent, and not appointing substitute counsel. We affirm Nguyen's conviction.

BACKGROUND[1]

*Factual Background*

Bouaichi was charged with rape, strangulation, abduction, burglary, forcible sodomy, and malicious wounding allegedly committed against K.D.G. In April 2020, Nguyen, a licensed bail bondsman for Freedom Bail Bonds, posted bond for Bouaichi's release. The Circuit Court of the City of Alexandria's bond order required Bouaichi to "remain in the home of his parents . . . except to 1) meet with his counsel or 2) to meet with pretrial services," and to have no contact with K.D.G. The recognizance listed the same conditions.

Nguyen was not present for the bond hearing but signed the recognizance as a surety. The recognizance required that "each person who sign[ed] [the] bond agree[ed] to the bond terms and any attached applicable terms" and "each person who sign[ed] the form agree[ed] to obey all of the terms and conditions on both sides of [the] form." The magistrate also signed the recognizance, indicating that he had "explained the conditions and warnings contained in [the order]" and "each person signing as surety swore or affirmed to fulfill the recognizance and . . . the bond."

At the time Nguyen posted bond for Bouaichi, the two men had been friends for more than ten years. After Bouaichi was released on bond, Nguyen did not hear from him for several weeks until Bouaichi reached out asking to meet Nguyen's son in mid-June. Nguyen and

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the trial court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

Bouaichi began occasionally meeting at a local park. Nguyen started bringing Bouaichi to work with him at a mall and allowing Bouaichi to ride along with him when he conducted bondsman duties. They sometimes went out for dinner together. Nguyen soon learned that Bouaichi's parents had barred him from their home after an incident between Bouaichi and his father, after which Bouaichi began living in a tent in the woods. Nguyen started picking up Bouaichi from the tent to go to work and dropping him back off at the end of the day.

Nguyen had a vacation planned for a weekend in late July 2020. He asked Bouaichi to stay in his home to watch his dogs and wash his father's car while he was away. He offered use of his car to Bouaichi for the weekend so Bouaichi could get to work and get food. Before leaving town, Nguyen removed his duffel bag with his pistol from his car and hid it in his bedroom closet under towels so Bouaichi would not find them. He also told Bouaichi, "Don't fuck this up."

That weekend, Bouaichi took Nguyen's car and pistol and drove to Maryland, where he murdered K.D.G. Bouaichi killed himself a week later. Nguyen had been in touch with Bouaichi the first day of his trip but became worried after he stopped hearing from Bouaichi and confirmed that Bouaichi's family also had not heard from him. When Nguyen returned home two days later, he realized his car and pistol were missing. He called the police and warned them Bouaichi might do something to K.D.G. A detective told Nguyen that Bouaichi had already killed K.D.G.

*Criminal Contempt Trial*

The Commonwealth moved the Circuit Court of the City of Alexandria to issue a capias against Nguyen for criminal contempt of court for his "knowing and willful violation of several of the provisions contained in the [bond] order and recognizance." The court issued the capias

- 3 -

and requested that a judge from another jurisdiction be designated for the case. Judge Sharp was designated and presided over Nguyen's bench trial in January 2022.

At the close of the Commonwealth's case-in-chief, Nguyen moved to strike the Commonwealth's evidence, arguing that nothing in the bond order, recognizance, or Virginia law obligated Nguyen to ensure Bouaichi's compliance with Bouaichi's bond conditions. The court denied the motion, finding that "the signature of the defendant on these documents does make him personally liable for if not the enforcement, at least the monitoring of the conditions of bond as are set out by the court." The court explained:

> [A] bondsman's responsibilities do not rest solely on making sure that the charge appears at court on time, but also makes sure that all the items indicated in the bond instruments are complied with. That much is clear from the specificity with which they're spelled out in the bond documents. It's also clear in the pre-printed form, which clearly obligates the signatories to follow all the rules imposed by the court.

The court concluded that it "could find that there were violations, that they were willful, and they were contemptuous," noting "the defendant was personally involved at many stages of those deviations where other actions could have been taken."

Nguyen then presented evidence in defense. Nguyen's retained counsel, Jonathan Moseley, called and questioned one witness. Moseley was questioning a second witness—David Gambale, owner of Freedom Bail Bonds and Nguyen's employer—when he asked the court for a brief recess. Moseley then informed the court that Nguyen wished to "take over at this point." The court informed Nguyen of the magnitude of the decision to represent oneself and explained that the court would need to make a few findings before allowing Nguyen to exercise his right to self-representation.

As part of this colloquy, the court asked Nguyen if he "underst[ood] that once [he] ma[de] this decision, [he] [could not] change course, and then decide [he] want[ed] to return to

- 4 -

counsel." Nguyen responded that he understood and that he wanted to represent himself because Moseley had been unresponsive leading up to trial and "wasn't prepared" and he now realized during trial that Moseley was "incompetent." Nguyen said, "I feel like I could do a better job representing myself. Or . . . if you give me an opportunity to get a public defender, that'd be great too." When the court asked him to clarify, Nguyen said he "would rather have a public defender if that's possible." The court replied that it would be "too late in the game for [it] to appoint a public defender." Nguyen responded, "I can represent myself, sir, I can do it." He testified that he felt "very competent" to represent himself. He also said he planned to testify in his own defense. The court twice confirmed that Nguyen understood he was not required to testify in his own defense. The court then found that Nguyen was "making [his] decision competently" and ruled Nguyen could represent himself, with Moseley at his side for Nguyen to consult if needed. Nguyen responded to the ruling, "Perfect, thank you sir, appreciate it."

Nguyen proceeded with questioning Gambale, who testified that bondsmen are generally not obligated to enforce conditions of bond. Nguyen then testified in his own defense that because he was not in the courtroom for the bond hearing, he "wasn't aware of the conditions of the bond." He admitted he signed the recognizance without reading the conditions or paying much attention to the magistrate because, in his several years as a bondsman, he had never had to enforce bond conditions. Nguyen renewed his objections from his motion to strike in his closing argument.

The court convicted Nguyen of contempt of court, in violation of Code § 18.2-456(A)(5). The court found that "the bondsman is required not only by law, but by the terms of the bonding instrument not only to assure the appearance of the defendant, but also to assure compliance with all the other issues on the bond document." The court rejected Nguyen's argument that he was unaware of the bond conditions and recognizance terms, because he had signed the recognizance,

the magistrate signed indicating that all signatories had been advised of the terms of the recognizance, and Nguyen told Bouaichi to "not fuck this up." The court explained that it had never seen such a relationship between bondsman and principal, and distinguished this case from a case in which the bondsman "came upon information that somebody was doing something bad[,] [o]r somebody wasn't living where they were supposed to be, and failed to report it." Instead, the court found Nguyen affirmatively "allow[ed] [Bouaichi] on a daily basis to be in violation" of his bond conditions in a "whole series of events that was being ratified by [Nguyen]," which the court characterized as a "willful violation."

The court continued the case for sentencing to give Nguyen time to obtain counsel, then found Nguyen was indigent and appointed counsel. After a sentencing hearing, the court sentenced Nguyen to 12 months' imprisonment, with 11 months suspended, and a $1,000 fine. Nguyen appeals his conviction.

ANALYSIS

I. Criminal Contempt

Nguyen argues that the evidence was insufficient to convict him of contempt of court for violating the terms of the bond order and recognizance because the instruments did not require him to ensure that Bouaichi complied with all the terms and conditions of his bail. While we agree that Nguyen was not required to enforce the bond conditions or ensure Bouaichi's compliance, we disagree that the court lacked sufficient evidence to convict Nguyen for contempt.

A. *Standard of Review*

"Where the court's authority to punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it." *Abdo v. Commonwealth*, 64 Va. App. 468, 474-75 (2015) (quoting *Brown v.*

*Commonwealth*, 26 Va. App. 758, 762 (1998)).  When reviewing the sufficiency of the evidence, this Court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Secret*, 296 Va. at 228).  To the extent that a defendant's sufficiency challenge "requires the Court to determine the meaning of a statute and its terms, [we] review[] that issue de novo."  *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020).

  B.  *A court's inherent contempt authority is broader than the contempt power delineated in Code § 18.2-456.*

"It has long been recognized and established that a court is invested with power to punish for contempt, both by the inherent nature and constitution of the court and by [statute]."  *Higginbotham v. Commonwealth*, 206 Va. 291, 294 (1965); *see also Wells v. Commonwealth*, 62 Va. (21 Gratt.) 500, 503 (1871) ("The power to fine and imprison for contempt is incident to every court of record.").  Nguyen was convicted under Code § 18.2-456(A)(5), which authorizes courts to summarily punish for contempt of court "an officer of the court, juror, witness, or other person" who "disobe[ys]" or "resist[s]" "any lawful process, judgment, decree, or order of the court."  More broadly, this statute sets out the acts for which a court can punish summarily for contempt, without a full hearing or other due process protections.  Code § 18.2-456.

But Virginia courts have long held that "these statutes do not limit the court's power where it exercises its inherent common law power to punish for indirect contempt."[2]  *Robinson v. Commonwealth*, 41 Va. App. 137, 146 (2003); *Carter v. Commonwealth*, 96 Va. 791, 808 (1899) (explaining that contempt statutes are "declaratory of the powers existent in the court established

---

[2] "Indirect contempts" are contempts "committed not in the presence of the court," like Nguyen's.  *Burdett v. Commonwealth*, 103 Va. 838, 846 (1904).

by the constitution" and can "reasonabl[y] regulat[e]" courts' contempt powers, but cannot "be construed as a negation of the power of the court to punish a contempt"). In other words, a trial court retains common law authority to punish acts beyond those delineated in the statute, so long as it affords the accused full plenary proceedings. *See Robinson*, 41 Va. App. at 146. While Nguyen received such process (obtaining counsel, preparing a defense, and having a full bench trial), we nevertheless find the parties proceeded under Code § 18.2-456(A)(5), and so the language of that statute applies here to limit the court's authority. Nguyen was charged with a violation of Code § 18.2-456(A)(5), convicted with reference to the statute (without objection by either party), and both parties continue to argue on appeal that Nguyen must have acted in "disobedience or resistance . . . to any lawful process, judgment, decree, or order of the court." Therefore, we review the contempt finding under Code § 18.2-456(A)(5).

C. *When a defendant is admitted to bail, the bail order and recognizance together constitute a "lawful process" of the court.*

A court's authority to admit defendants to bail, set bond conditions, and issue recognizances is governed by statute. *See* Code §§ 19.2-119 through -152.7. Code § 19.2-120(A) requires judicial officers to admit defendants to bail "unless there is probable cause to believe that: 1. [the defendant] will not appear for trial or hearing or at such other time and place as may be directed, or 2. [the defendant's] liberty will constitute an unreasonable danger to himself, family or household members . . . or the public." In doing so, the court may "fix[] terms of bond or recognizance." Code § 19.2-120(C). "Recognizance" is defined as a "signed commitment by a person to appear in court as directed and to adhere to any other terms ordered by an appropriate judicial officer as a condition of bail." Code § 19.2-119. "Bond" is defined as the "posting by a person or his surety of a written promise to pay a specific sum, secured or unsecured, ordered by an appropriate judicial officer as a condition of bail to assure

- 8 -

performance of the terms and conditions contained in the recognizance." *Id.* The surety is often

a surety bail bondsman, defined by statute as:

> a person licensed pursuant to [the code section and the State
> Corporation Commission] as a property and casualty insurance
> agent, who sells, solicits, or negotiates surety insurance . . .
> pursuant to which the insurer becomes surety on or guarantees a
> bond, as defined in § 19.2-119, that has been posted to assure
> performance of terms and conditions specified by order of an
> appropriate judicial officer as a condition of bail.

Code § 9.1-185. The statutory scheme also makes clear that "[n]othing in [Title 19.2, Chapter 9]

shall interfere with or prevent the exercise by any court of the Commonwealth of its power to

punish for contempt, except that a person shall not be sentenced for contempt and [willful failure

to appear] for the same absence." Code § 19.2-129.

In sum, a court may order a defendant's release on bail conditioned on the posting of a

bond as well as other terms, and the recognizance memorializes those conditions and provides

notice and an enforcement mechanism for revoking bail if terms are violated. So a recognizance

is part of the court's bail "process,"[3] and so long as that process is "lawful," disobedience of or

resistance to the obligations of the recognizance can support a contempt conviction under the

language of Code § 18.2-456(A)(5). *See Brown v. Commonwealth*, 144 Va. 676, 678-79, 683

(1926) (affirming contempt conviction for defendant's "disobedience of the [court's] lawful

process" for failing to comply with a recognizance's terms); *see also Epps v. Commonwealth*, 47

Va. App. 687, 716 (2006) (en banc) (affirming defendant's conviction for "disobedience of

---

[3] In setting out the tort of "false imprisonment," we have long referred to "lawful process" as the detention of a person apart from the statutory process for evaluating whether a person may be released on bond. For example, in *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 114-15 (2021), the Supreme Court reasoned that false imprisonment had not been proven "because Dill was detained pursuant to lawful process, which was lawfully executed" because after she reported to the police department as instructed, and was then arrested, she was "taken before a magistrate who placed her on bond, ordered her to remain in the Commonwealth, and prohibited her from visiting the Kroger store."

lawful process or order" for removing an order the judge had posted on the courthouse door), *aff'd*, 273 Va. 410 (2007).

    D. *Out-of-court conduct cannot be the basis for contempt without notice that the conduct was prohibited, and Nguyen had sufficient notice of the recognizance's terms here.*

A person cannot be held in contempt for out-of-court conduct without notice that such conduct violated some obligation to the court. *See, e.g.*, *Zedan v. Westheim*, 60 Va. App. 556, 574 (2012) ("In order to hold a litigant in contempt for violation of a court order, the litigant must have knowledge of the terms of the order."). And that obligation "must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." *Epps*, 47 Va. App. at 716 (quoting *Michaels v. Commonwealth*, 32 Va. App. 601, 609 (2000)).

The recognizance Nguyen signed stated: "The terms and conditions of the recognizance are incorporated by reference, and each person who signs the form *agrees to obey* all of the terms and conditions on both sides of this form." (Emphasis added). One such term on the other side of the form was: "Defendant shall remain in the home of his parents at 7101 Megan Lane, Greenbelt, MD" except to meet with his attorney or pretrial services.

The trial court found Nguyen had notice of the recognizance's terms, rejecting his argument that he was unaware of the requirement that Bouaichi remain at his parents' home except to meet with counsel or pretrial services. Nguyen signed the recognizance as a surety bail bondsman. *See, e.g.*, *First Nat. Exch. Bank of Va. v. Johnson*, 233 Va. 254, 259 (1987) ("In the absence of fraud, duress, or mutual mistake, as here, an individual having the capacity to understand a written document who signs it . . . without reading it, is bound by the signature."). A magistrate signed the recognizance, attesting, "After I explained the conditions and warnings contained in this document . . . each person signing as surety swore or affirmed to fulfill the recognizance and, if any, the bond." The court also found that Nguyen's warning to Bouaichi

not to "fuck this up" before leaving town on vacation showed Nguyen knew that he had created a situation that violated the requirement of the recognizance and bond order. *See McGowan*, 72 Va. App. at 516 (requiring this Court to regard as true "all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence"). The trial court did not err in finding that Nguyen had notice of the recognizance's terms.

    E. *While a bail bondsman has no general duty to report bond violations to the court, or to enforce the court's bond conditions, Nguyen failed to obey the terms of the recognizance by taking active steps to help Bouaichi live elsewhere.*

Having found that Nguyen had notice of the recognizance's terms, we now consider whether Nguyen "disobey[ed] or resist[ed]" the court's condition that Bouaichi "remain in the home of his parents . . . except to meet with his attorney or pretrial services." While we agree with the circuit court that Nguyen's actions qualified as contempt under Code § 18.2-456(A)(5), we disagree that a bail bondsman is "personally liable for . . . the monitoring of the conditions of bond" and "[en]sur[ing] that all the items indicated in the bond instrument are complied with."

When a defendant uses a surety bail bondsman to pay a cash bond, a contract is formed among three parties: the criminal defendant, the bondsman, and the court.[4] The bondsman pledges the full amount of the financial bond to the court in exchange for the defendant paying the bondsman some percentage of that amount that the bondsman keeps. *See* Code § 9.1-185.10. The bondsman promises the court that the defendant will appear as ordered. Code §§ 9.1-185, 19.2-119. If that promise is kept, the court returns the money to the bondsman. If the defendant fails to appear, the court retains the full amount. Code §§ 19.2-128, 19.2-148.

As a result, the bondsman has a strong financial incentive to ensure that a defendant appears as ordered. Code § 19.2-149(A) permits a bondsman to arrest the defendant "at any

---

    [4] *See generally* Milton Hirsch, *Midnight Run Re-Run: Bail Bondsmen, Bounty Hunters, and the Uniform Criminal Extradition Act*, 62 Univ. Mia. L. Rev. 59, 61-69 (2007) (providing general background on the bail process).

time" and "surrender him to the court." If the bondsman does this after a defendant failed to appear, the bondsman automatically gets back the amount of bond from the court. *Id.* If the bondsman surrenders the defendant to the court for another reason (including a violation of some other condition of the recognizance or bond order) the bondsman will not lose any money so long as the court agrees there was "sufficient cause." Code § 19.2-149(B).

We agree with Nguyen that the statutes governing bail bondsmen impose a financial obligation on a bail bondsman and *permit* the bondsman to arrest the defendant for violating terms or conditions of a bond, but that no statute *requires* a bondsman to make such an arrest. Conditions of bond are individualized and personal, frequently limiting who a defendant may have contact with and when, or what a defendant may do within his own home (e.g., restricting the consumption of alcohol or use of the internet). Requiring a bondsman to ensure that a defendant is complying with every bond condition or be held in contempt of court, would be both invasive for defendants and unworkable for bondsmen.[5] In the ordinary course, if a bondsman is certain a defendant is in violation of a bond condition, he has a financial incentive to arrest the defendant, and surrender him to the court to end the contractual obligation early and ensure full payment. But that incentive is only financial. *See Leary v. United States*, 224 U.S. 567, 575 (1912) ("The interest to produce the body of the principal in court is impersonal and wholly pecuniary."). We disagree with the trial court that the surety bail bondsman "is required

---

[5] Code § 19.2-149 permits a bail bondsman to arrest the defendant "at any time." The statute reflects the common law rule that bail bondsmen may, "[w]henver they choose to do so . . . seize [the defendant] and deliver him up in their discharge," including, "if necessary . . . break[ing] and enter[ing] his house for that purpose." *Taylor v. Taintor*, 83 U.S. 366, 371 (1872). And they may generally do so without a warrant. *See State v. Nugent*, 508 A.2d 728, 732 (Conn. 1986) ("Absent a statute, [a bail bondsman] requires no legal process, judicial or administrative," to ensure a defendant's appearance in court.).

not only by law, but by the terms of the bonding instrument . . . to assure *compliance* with all the other issues on the bond document."[6]  (Emphasis added).

However, we agree with the court that Nguyen was "personally involved" in "willful" violations of the recognizance and that this disobedience to lawful process qualified as contempt under Code § 18.2-456(A)(5).  Our Supreme Court has held that when "one shows by his conduct a deliberate and studied effort to disobey a valid order of the court, he subjects himself to punishment for contempt."  *Laing v. Commonwealth*, 205 Va. 511, 515 (1964).  So too when one shows a "deliberate and studied effort to disobey" a lawful process of the court.  Nguyen pledged as surety bail bondsman to "*obey* all of the terms and conditions" of the recognizance, including the condition that Bouaichi remain at a specific address.  (Emphasis added).  Instead, Nguyen repeatedly picked up Bouaichi from that address and other locations.  Nguyen repeatedly drove Bouaichi to accompany Nguyen at his job at a local mall.  And Nguyen invited Bouaichi to stay at his home to watch his dogs while he was out of town on vacation.  In each of these acts, Nguyen showed a "deliberate and studied effort to disobey" the recognizance and bond conditions by creating opportunities for Bouaichi to be in locations other than his parents' home and encouraging Bouaichi to do so.  The evidence was sufficient to convict Nguyen of criminal contempt for disobeying the court's order.

---

[6] The trial court instead seems to describe the responsibilities when a defendant is released into the *custody* of another person.  On Bouaichi's recognizance form, there is a section stating:

> The defendant is released into the custody of the person/organization named below upon completion of this part.  By signing this part, the custodian named below agrees to take custody of the defendant and *see that the defendant obeys the conditions listed above*.  If the defendant disappears or *does not obey every condition*, *the custodian promises to notify the court at once*.

(Emphases added).  This section was left blank and unsigned.

Nguyen's actions are distinguishable from merely not reporting Bouaichi's bond violation to the court. Nguyen simply cannot be said to have "obeyed" the condition that Bouaichi remain at his parents' home except to meet with his attorney or pretrial services, by driving him to other locations and ultimately allowing him to stay at his own house. The element of intent—which "must be present for a defendant to be found guilty of contempt," *Abdo*, 64 Va. App. at 476—further enhances this line between inaction and action. Only an act committed willfully or recklessly can support a contempt conviction, which means the "act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." *Id.* at 477 (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). Rarely will a court's bond order or recognizance put any person in the position where his own affirmative conduct would itself constitute a criminal violation of a recognizance written for another person's release. But the unique circumstance of this case is that Nguyen invited the peril of criminal contempt by actively, affirmatively, and directly violating the recognizance and his obligation in the bail process.

To sum up, we do not hold that the language in this recognizance obliged Nguyen to monitor Bouaichi's compliance with its terms or report any non-compliance he learned about. Instead, we hold the court was not plainly wrong to find that Nguyen's affirmative actions to encourage and facilitate Bouaichi regularly leaving his parents' home constituted disobedience of the court's order, in violation of Code § 18.2-456(A)(5).

## II. Right to Counsel

Nguyen argues that the trial court erred both by allowing Nguyen's retained counsel to withdraw mid-trial and then denying Nguyen's request for court-appointed counsel after his retained counsel withdrew. Again, we disagree.

"Because the Sixth Amendment guarantee to the assistance of counsel 'implies a right of self-representation,' a defendant may waive his right to counsel and proceed pro se at trial." *Herrington v. Commonwealth*, 291 Va. 181, 189 (2016) (quoting *Faretta v. California*, 422 U.S. 806, 821 (1975)). When reviewing the trial court's decision on a motion for self-representation, this Court reviews the trial court's findings of fact for clear error and the trial court's application of legal standards de novo. *See Blue v. Commonwealth*, 49 Va. App. 704, 710 (2007). "A trial judge has broad discretion in determining whether a continuance to obtain counsel is necessary in order to preserve the accused's right to assistance of counsel." *Reyes v. Commonwealth*, 68 Va. App. 379, 385 (2018) (quoting *Johnson v. Commonwealth*, 51 Va. App. 369, 374 (2008)). The "denial of a continuance will not be reversed on appeal absent an abuse of discretion and prejudice to the defendant." *Id.* (quoting *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990)).

When the defendant elects to waive counsel and proceed *pro se* at trial, his request must be "timely, clear, and unequivocal." *Thomas v. Commonwealth*, 260 Va. 553, 558 (2000). As for timeliness, "[o]nce meaningful trial proceedings have commenced . . . the decision to permit the exercise of the right of self-representation lies within the trial court's sound discretion." *Id.* at 559. Whether the request for self-representation is clear and unequivocal "involves much more than simply measuring how emphatically it has been asserted." *Edwards v. Commonwealth*, 49 Va. App. 727, 738 (2007). The right to counsel is not waived if the defendant merely takes "vacillating positions" or makes "occasional musings" about self-representation. *Id.* at 739 (quoting *United States v. Frazier-El*, 204 F.3d 553, 558-59 (4th Cir. 2000)). And "[i]n ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the

individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *Id.* (quoting *Frazier-El*, 204 F.3d at 559).

Even if a defendant does timely, clearly, and unequivocally waive his right to counsel, such waiver is valid only if done knowingly, intelligently, and voluntarily. *Herrington*, 291 Va. at 189. The trial court must ask whether the defendant "actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)). The court should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes wide open." *Id.* (quoting *Faretta*, 422 U.S. at 835). But no specific instruction or form of questioning is required: "While a formal, specific inquiry on the record regarding the capability of the accused to understand and decide the issue of waiver may be the wiser practice, the absence of such a procedure is not fatal." *Watkins v. Commonwealth*, 26 Va. App. 335, 343 (1998); *see also Kinard v. Commonwealth*, 16 Va. App. 524, 527 (1993) ("[T]he primary inquiry . . . is not whether any particular ritual has been followed in advising the defendant of his rights and accepting his waiver, but simply whether the procedures followed were adequate to establish an 'intentional relinquishment of the right to counsel, known and understood by the accused . . . .'" (alterations in original) (quoting *United States v. Doe*, 743 F.2d 1033, 1038 (4th Cir. 1984))). Instead, "[w]hether there has been an intelligent waiver of right to counsel depends upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused." *Edwards v. Commonwealth*, 21 Va. App. 116, 124 (1995).

Nguyen argues that the waiver of his Sixth Amendment right to counsel was not (1) timely, clear, and unequivocal; or (2) knowingly, intelligent, and voluntary. He contends that his discussion with the court does not clearly and unequivocally show he wished to represent

himself, but rather just wanted someone other than Moseley to represent him. He also suggests his waiver could not be voluntary because, when the court said it was too late to appoint him a public defender, he was left only with the choice between self-representation and counsel he considered incompetent. Finally, he argues that the court's colloquy with him was inadequate to determine that he knowingly and intelligently waived his right to counsel because the court did not sufficiently investigate the reasons for why Nguyen wanted to fire Moseley.

The trial court did not misstate any legal standards in its colloquy with Nguyen about his decision to represent himself, so our review is limited to whether the court clearly erred in finding that Nguyen validly waived his right to counsel. *See Blue*, 49 Va. App. at 710; *see also Thomas*, 260 Va. at 559 (because the trial had already started, the decision to allow self-representation was within the trial court's "sound discretion"). The record supports a finding that Nguyen's waiver was clear and unequivocal. The court asked point-blank several times whether Nguyen wanted to proceed with representing himself, while explaining the risks of doing so. Every time, Nguyen reiterated that he wanted to represent himself. He waffled from that position only when he said he "would rather have a public defender if [that was] possible." But when the court replied that it would be "too late in the game . . . to appoint a public defender," Nguyen reiterated that he could represent himself and felt "very competent" in doing so. He did not waver from that position again. There was nothing ambiguous in Nguyen's assertion of his rights—he consistently made clear that if he could not have a public defender appointed mid-trial, he wanted to represent himself.

That brings us to the question of whether Nguyen's waiver of his right to counsel and exercise of his right to self-representation was "voluntary," given the court limited his choices to proceeding with his retained counsel or proceeding *pro se*. Courts have consistently found that "[w]hen a defendant is given a clear choice between waiver of counsel and . . . retaining present

counsel, the choice is voluntary so long as it is not constitutionally offensive." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (citing *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976)). "The question of voluntariness therefore turns on whether defendant's objections to present counsel are such that he has a right to *new* counsel." *Id.* (emphasis added). We have held that when a defendant "waits until the last minute to request a continuance to obtain new counsel, exceptional circumstances must be shown [in order] to overcome the state's countervailing interest in proceeding expeditiously." *Brailey v. Commonwealth*, 55 Va. App. 435, 444 (2009). We have consistently found it within trial courts' discretion to deny continuance motions to obtain new counsel made the day of trial because of the "state's countervailing interest." *See id.* at 445; *Johnson*, 51 Va. App. at 375-76; *Bolden v. Commonwealth*, 11 Va. App. 187, 191-93 (1990). Nguyen's request came even later, after the Commonwealth had rested and the defense was in the middle of presenting its case, and he did not present "exceptional circumstances" justifying a continuance. *See Brailey*, 55 Va. App. at 445 (defendant's general representation that he and his retained counsel did "not see eye to eye" was not an exceptional circumstance). We cannot say the trial court erred in telling Nguyen it was "too late in the game" to replace his counsel.

Finally, the trial court's colloquy sufficiently explored why Nguyen wanted to fire Moseley and proceed *pro se*. As Nguyen argues on brief, "if an indigent[7] defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." *Kinard*, 16 Va. App. at 526 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)). Even assuming that the same inquiry is required for retained counsel, we have already determined that the trial court acted within its discretion in

---

[7] Nguyen retained Moseley for trial but was determined indigent before sentencing.

denying substitute counsel, given the late stage of the proceedings. Still, the court's inquiry into Nguyen's reasons for discharging Moseley could bear on whether Nguyen's exercise of his right to self-representation was knowing and intelligent. *See United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002) (explaining that "the identification of the defendant's reasons for wishing to dismiss his current counsel is more pertinent when substitute counsel is desired," but "his reasons may also inform" whether the waiver was knowing and intelligent).

The trial court asked Nguyen why he wanted to represent himself. Nguyen replied that he felt Moseley was unresponsive leading up to trial, "wasn't prepared," and was "incompetent," and then said, "I feel like I could do a better job representing myself." The trial court did not further inquire into the reasons Nguyen gave for being dissatisfied with Moseley, but the court was present to observe the interactions between Nguyen and Moseley, as well as Moseley's performance. While the trial court perhaps could have further explored Nguyen's reasons for wanting to fire Moseley and proceed *pro se*, its inquiry is just one component of our review of all the facts and circumstances related to whether Nguyen knowingly and intelligently undertook self-representation. *See Edwards*, 21 Va. App. at 124; *Watkins*, 26 Va. App. at 345 ("Although the trial court did not make the searching, formal inquiry that we would prefer, the record before the trial court allowed the court to determine that appellant's waiver of counsel was knowing, voluntary[,] and intelligent.").

Here, the trial court explained the consequences of self-representation and a potential guilty verdict; that Nguyen would be bound by the rules of evidence, that Nguyen could not change his mind if the court allowed him to proceed *pro se*, that Nguyen would have a right to appeal, and that Nguyen need not testify in his own defense. The court asked Nguyen, "You feel able, and competent, given all the testimony you've heard, and whatever there is to come . . . to present the rest of the case as you see fit, is that correct?" Nguyen replied, "Yes, I'm very

competent." The court concluded Nguyen was "making this decision competently."[8] On balance, we conclude Nguyen's waiver of his right to counsel and exercise of his right to self-representation were knowing and intelligent.

The trial court did not clearly err in allowing Nguyen to represent himself and denying his request for court-appointed counsel.

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[8] In doing so, the court applied the correct legal standard—"the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez*, 509 U.S. at 400. *Contra Edwards*, 49 Va. App. at 736-37 (finding trial court erred in denying defendant's request to proceed *pro se* because it found the defendant lacked sufficient legal knowledge to represent himself).